## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Norfolk Division

|  |  |  |
|---|---|---|
| COLUMBIA GAS TRANSMISSION LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2:12-cv-172 |
| AARON OTT, | ) ) | |
| Defendant. | ) ) ) | |

## REPORT AND RECOMMENDATION

Before the Court are the parties', Columbia Gas Transmission, LLC ("Columbia"), and Aaron Ott ("Ott"), Motions for Summary Judgment. ECF Nos. 26, 28. After being fully briefed, the Motions were referred for disposition to the undersigned U.S. Magistrate Judge ("undersigned") pursuant to a July 3, 2013, Referral Order from the Chief U.S. District Judge and in accordance with 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Civil Rule 72. Upon reviewing the briefs, the undersigned disposes of the Motions on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Columbia's Motion for Summary Judgment, ECF No. 28, be **GRANTED** and Ott's Motion for Summary Judgment, ECF No. 26, be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Columbia is a limited liability company, the sole member of which is Columbia Energy Group ("CEG"). ECF No. 27 at 3, ¶ 4. Ott, an individual, purchased, currently owns, and

presently resides on real property located at 1437 Glendale Avenue, Chesapeake, Virginia 23323 ("property"). *Id.* at 3, ¶¶ 1-2. He purchased this property by a September 18, 2009 warranty deed, which was recorded on October 1, 2009, in the land records of Chesapeake, Virginia. ECF No. 29 at 3, ¶ 3. Pursuant to this deed, the property was purchased "subject to the easements, conditions, and restrictions of record insofar as they may lawfully affect" it, including two right-of-way ("ROW") agreements. *Id.* at 3-4, ¶¶ 4-5.

The first right-of-way agreement, dated November 17, 1950 ("1950 ROW"), granted a fifteen-foot wide easement on the property to the Commonwealth Natural Gas Corporation ("Commonwealth Natural") from Wm. W. Old, Jr., in his capacity as receiver for the Willow Glen Corporation. ECF No. 27 at 4, ¶ 10. It also provided

> [t]hat the owners of said land, their heirs and assigns, shall have the right to use the land within said Easement and Right-of-Way for their own purposes, provided such use shall not interfere with the proper and efficient installation, maintenance and operation of said pipe lines and appurtenances, and provided further that no buildings or structures of any nature be erected within said Right-of-Way.

*Id.* at 5, ¶ 13. The second right-of-way agreement, dated February 25, 1963 ("1963 ROW"), granted a fifty-five-foot wide easement on the property, which is directly adjacent to the 1950 ROW, to Commonwealth Natural from P.A. Agelasto, Jr., the executor of the estate of W.T. Stonecypher. *Id.* at 4-5, ¶¶ 11-12. It also provided "that the gas line to be laid . . . shall be constructed and maintained below cultivation, so that Grantors may fully use and enjoy the premises, subject to the rights of the rights of the Grantee to maintain and operate said line or lines." *Id.* at 5, ¶ 14. Collectively, the 1950 and 1963 ROWs create a seventy-foot wide easement on the property. ECF No. 29 at 5, ¶ 9. Columbia and Ott are successors-in-interest to the grantees and grantors, respectively, of the 1950s and 1963 ROWs. ECF No. 27 at 5, ¶¶ 15-

16.

Since purchasing the property, Ott has maintained a fence, which is situated on the 1950 ROW, and an above-ground swimming pool and shed, which are situated on the 1963 ROW (collectively, "improvements").[1]  ECF No. 29 at 5, ¶ 10.  Running across the property and below grade of the 1950 and 1963 ROWs are two high-pressure natural gas transmission pipelines—the twelve-inch VM 107 and the sixteen-inch VM 108—that are maintained and operated by Columbia. *Id.*

On March 30, 2012, Columbia filed suit against Ott in this Court, claiming the above-ground swimming pool, shed, and fence are encroachments.  It contends these improvements impair its ability to maintain and operate its pipelines in a safe and effective manner, thereby posing a risk to person, property, and the uninterrupted delivery of natural gas to the Tidewater area of Virginia.  Despite Columbia's demand, Ott has refused to remove the improvements. This suit followed, and, therein, Columbia requests that the Court find that the improvements breach the 1950 and 1963 ROWs, order their removal, and enjoin Ott from further encroaching on the ROWs.  Ott filed an Answer on October 25, 2012, and an Amended Counterclaim on November 8, 2012, claiming inverse condemnation.  Although Columbia moved to dismiss the Amended Counterclaim for failure to state a claim, the Court denied the motion on January 2, 2013.  Columbia subsequently answered the Amended Counterclaim on January 16, 2013.  On June 6, 2013, Ott moved for summary judgment as to the Complaint, and on June 20, 2013, Columbia moved for summary judgment as to its Complaint and Ott's Amended Counterclaim.

---

[1] Although Ott includes in his statement of undisputed facts that "[t]here are 'no building or structures' located on the First Agreement's easement," ECF No. 27 at 6, ¶ 20, it is his argument, which the undersigned addresses *infra*, that a fence, which is situated on the 1950 ROW, does not constitute a "building" or "structure," such that the 1950 ROW has not been violated.

After being fully briefed, the Motions, which are now ripe, were referred to the undersigned for disposition pursuant to a July 3, 2013, Referral Order from the Chief U.S. District Judge.

## II. JURISDICTION AND VENUE

The parties maintain, and the undersigned concurs,[2] that the Court may properly exercise subject-matter jurisdiction on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). First, there is complete diversity of citizenship between the parties: Ott, an individual, is a citizen of Virginia, ECF No. 27 at 3, ¶ 1, and Columbia, a limited liability company with its sole member being CEG, is a citizen of Delaware (where CEG is incorporated) and Ohio (where CEF has its principal place of business),[3] ECF No. 29 at 3, ¶ 1; *see O'Connor v. Columbia Gas Transmission Corp.*, No. 3:09CV00022, 2009 WL 1491035, at *1 (W.D. Va. May 26, 2009) ("CEG is a Delaware corporation with its principal place of business in Ohio and has no offices in Virginia. Because a limited liability company is a citizen of every state in which any one of the owners of the company is a citizen, . . . Columbia should be considered a citizen of Delaware and Ohio—not Virginia.") (citations and footnote omitted). Second, the amount-in-controversy exceeds $75,000.00. *See* ECF No. 29 at 10 ("Columbia is seeking to avoid 'catastrophic' harm that would easily and obviously exceed $75,000."); *id.*, attach. 1 at 3, ¶ 10 ("Columbia's average daily revenue from the operation of the Pipeline exceeds $31,000."); *Tex. E. Transmission Corp. v. Giannaris*, 818 F. Supp. 755, 759 (M.D. Pa. 1993) (concluding the

---

[2] Although the parties agree that the Court has jurisdiction over this matter, it "[h]as an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (internal citations omitted).

[3] To the extent an argument can be made that Columbia is also a citizen of West Virginia, this will not disturb complete diversity between the parties. *See Bernie v. Columbia Gas Transmission Corp.*, No. Civ.A.3:05CV00011, 2005 WL 2621989, at *3 (W.D. Va. Oct. 12, 2005) ("The Magistrate's Report, however, notes that the Fourth Circuit has previously found that the Defendant[, Columbia,] is a citizen of West Virginia.") (citation omitted); *id.* at *3 n.1 ("Numerous cases from other circuits have found the Defendant to be a citizen of West Virginia as well.") (citations omitted).

plaintiff demonstrated by a preponderance of the evidence that the value of the natural gas pipeline right-of-way, the public interest in preventing the physical and environmental catastrophe that could result from an improperly maintained pipeline, and the costs which the plaintiff would incur if the pipelines were closed, exceed the jurisdictional amount). The Court also may properly exercise general personal jurisdiction over Ott, a citizen of Virginia. *See Day v. Mount Vernon Fire Ins. Co.*, No. 1:12cv669 (LMB/IDD), 2013 WL 3144827, at *8 (E.D. Va. Jan 23, 2013) ("Personal jurisdiction is proper over the . . . parties, as they are all citizens of Virginia.") (citation omitted). Finally, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Ott presently resides and the property that is the subject of this suit is located in the Eastern District of Virginia, Norfolk Division.

## III. <u>STANDARDS OF REVIEW</u>

### A.  Declaratory Judgment

Columbia requests declaratory relief, pursuant to 28 U.S.C. § 2201, by asking this Court to construe the terms of the 1950 and 1963 ROWs and find that the improvements Ott has maintained on his property breach these ROWs. That statute states: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Court has considerable discretion whether to grant declaratory relief, and should only do so in appropriate cases. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). One such case is where a plaintiff "has an objective and reasonable apprehension of future litigation, which is of sufficient immediacy and reality, that a declaration of legal rights

'will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Energy Recovery, Inc. v. Hauge*, 133 F. Supp. 2d 814, 817 (E.D. Va. 2000) (quoting *Centennial Life Ins. Co.*, 88 F.3d at 256-57).

Accordingly, Columbia has the burden of establishing by a preponderance of the evidence that an actual controversy exists. *Id.* An actual controversy exists where the dispute between the parties is "definite and concrete, touching the legal relations of parties having adverse legal interests," such that the Court may make an "immediate and definite determination of the legal rights of the parties in an adversary proceeding upon the facts alleged." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937). It is clear to the undersigned that an actual controversy exists as to the legal rights and obligations that Columbia and Ott have under the 1950 and 1963 ROWs: Columbia contends that the improvements Ott has maintained on his property breach these ROWs and must be removed, whereas Ott has refused removal on the ground that his right to fully use and enjoy his property, particularly the surface land, was reserved. Even the controversy over these ROWs has surpassed the stage of "threatened" or "future" litigation to point of present litigation, evincing a definite and concrete dispute between Columbia and Ott. As such, declaratory relief is appropriate here.

### B. Injunctive Relief

Columbia also requests injunctive relief by asking this Court to order Ott to remove the improvements from the 1950 and 1963 ROWs and to order him to refrain in the future from placing encroachments on these ROWs. In Virginia, injunctions are an extraordinary remedy, and the decision whether to grant injunctive relief lies within the sound discretion of the Court, taking into account the nature and circumstances of the case. *Levisa Coal Co. v. Consolidation*

*Coal Co.*, 662 S.E.2d 44, 53 (Va. 2008).[4]  In order to secure an injunction, the party requesting

the injunction has the burden of proving that it will suffer irreparable harm, and the lack of an

adequate remedy at law.  *Black & White Cars v. Groome Transp., Inc.*, 442 S.E.2d 391 (1994).[5]

Moreover, because an injunction is an extraordinary remedy, an injunction "must be specific in

its terms, and it must define the exact extent of its operation so that there may be compliance."

*Unit Owners Ass'n of Buildamerica-1 v. Gillman*, 292 S.E.2d 378, 387 (Va. 1982).

This matter involves an ongoing refusal by Ott, despite Columbia's demand, to remove

the improvements that he continues to maintain on the ROWs, thereby imminently threatening

physical and irreparable damage to the pipelines, to the public safety, and to a continuous supply

of gas to the region if Columbia cannot safely operate, inspect and repair its pipelines,

particularly in the event of an emergency.  For these reasons, injunctive relief as to the

improvements that Ott continues to maintain on the ROWs is appropriate.

However, to the extent Columbia is asking this Court to order Ott to refrain in the future

from placing encroachments on the ROWs, the undersigned is inclined to reject this request.

First, to the undersigned's knowledge, Ott has not actually threatened to place additional

improvements on his property, and Columbia does not indicate whether it has apprehended with

reasonable probability that he will do so.  Second, the term, "encroachment," generally speaking,

---

[4] The Court applies state law when deciding whether to issue a permanent injunction in cases arising under diversity jurisdiction.  *See Centennial Broad., LLC v. Burns*, No. 6:06CV06, 2006 WL 2850640, at *11 (W.D. Va. Sept. 29, 2006); *Safeway Inc. v. CESC Plaza Ltd. P'ship*, 261 F. Supp. 2d 439, 467-68 (E.D. Va. 2003) (finding that the use of state law, specifically Virginia law, was proper in determining whether a permanent injunction should issue).

[5] Though any injunction requires inadequate remedies at law and irreparable harm, Virginia law recognizes a distinction between mandatory and prohibitory injunctions.  A mandatory injunction is designed to "undo an existing wrongful condition" if the wrongful condition is likely to continue.  *WTAR Radio-TV Corp. v. City Council of Va. Beach*, 223 S.E.2d 895, 898 (Va. 1976).  A prohibitory injunction is designed to prevent a future wrong, and requires that the "wrong is actually threatened or apprehended with reasonable probability."  *Id.*  Columbia appears to request both types of injunctions.

is so indefinite that the undersigned is unable to fashion a sufficiently particularized permanent prohibitory injunction that adequately puts Ott on notice of what objects are prohibited on the ROWs. Third, even if this may be accomplished, Columbia presents no evidence to support a contention that all objects, for example something as trifling as a garden gnome, placed on the ROWs impair its ability to maintain and operate its pipelines in a safe and effective manner, thereby necessitating that object's permanent prohibition. Fourth, if such objects do so impair, an adequate remedy at law exists, namely, Columbia may file the same action as it did in this case. Finally, by issuing permanent prohibitory injunctive relief, the most the Court could do is issue an injunction stating that Ott must comply with the 1950 and 1963 ROWs. Given that he is already required to do this, the undersigned sees no reason to order him to refrain in the future from placing encroachments on the ROWs. *See Ctr. for Food Safety v. Johanns*, 451 F. Supp. 2d 1165, 1196 (D. Haw. Sept. 1, 2006) ("[I]njunctive relief is inappropriate . . . . The most the court could do is issue an injunction stating that APHIS must comply with NEPA, the ESA, and the APA; given that APHIS is already required to do all those things, and given that the permits have all expired (such that there is no ongoing or pending agency action to enjoin), the court sees no reason to issue an injunction.").

## C. Summary Judgment

Summary judgment under Rule 56 is appropriate when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an

8

essential element of that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To defeat a motion for summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings, instead relying upon affidavits, depositions, or other evidence to show a genuine issue for trial. *See id.* at 324. Conclusory statements, without specific evidentiary support, are insufficient. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998). Rather, "there must be evidence on which the jury could reasonably find for the [party]." *Anderson*, 477 U.S. at 252.

When faced with cross-motions for summary judgment, the court must review each motion separately on its own merit to determine whether either of the parties deserves judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Id.* (internal quotation marks and citation omitted).

## IV. ANALYSIS

The Court must construe the 1950 and 1963 ROWs to ascertain their scope and determine whether the improvements situated thereon breach the ROWs. Because these ROWs are located in Virginia, and given that this matter arises under diversity jurisdiction, Virginia law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

"Where the easement or right of way has been granted by deed[, as in this case, unless it is ambiguous,] the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source." *Gordon v. Hoy*, 178 S.E.2d

9

495, 496 (Va. 1971). The Virginia Supreme Court has held that when the language of a deed is "clear, unambiguous, and explicit," a court construing it "should look no further than the four corners of the instrument under review." *Langman v. Alumni Ass'n of the Univ. of Va.*, 442 S.E.2d 669, 674 (Va. 1994) (citation and internal quotation marks omitted). Only when the language of a deed is ambiguous may the court look to parol evidence or, specifically, "the language employed in the light of the circumstances surrounding the parties and the land at the time the deed was executed." *Hoy*, 178 S.E.2d at 496.

The parties' arguments are essentially twofold. First, although a fence is situated on the 1950 ROW (as well as the 1963 ROW), it is Ott's view that a fence is not a "building" or "structure" as contemplated and expressly prohibited by the ROW. *See* ECF No. 32 at 9 ("There are no 'buildings or structures' located on the first easement, merely a fence."). Columbia disagrees. Second, it is Ott's position that maintaining the improvements on the 1963 ROW does not constitute a breach because Ott's right to fully use and enjoy the property, particularly the surface land, was reserved; hence why Columbia's pipelines were installed below grade. *See id.* at 8. However, according to Columbia, Ott conspicuously ignores the part of the 1963 ROW that explicitly subjugates this right to Columbia's ability to maintain and operate its pipelines in a safe and effective manner.

### A. 1950 ROW and the Definition of "Structures"

It is a factual determination whether the terms, "buildings" and "structures," as contemplated and expressly prohibited by the 1950 ROW are ambiguous. *See Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992) ("[T]he construction of ambiguous contract provisions is a factual determination") (citation omitted). However, it is a

question of law whether ambiguity exists. *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 726 (4th Cir. 2000). Under Virginia law, "[c]ontract language is ambiguous when 'it may be understood in more than one way or when it refers to two or more things at the same time.'" *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 680 (Va. 2012) (quoting *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 668 (Va. 2002)). "A contract is not deemed ambiguous merely because the parties disagreed as to the meaning of the language they used to express their agreement." *Ross v. Craw*, 343 S.E.2d 312, 316 (Va. 1986). "Words that the parties used are normally given their usual, ordinary, and popular meaning." *D.C. McClain, Inc. v. Arlington Cnty.*, 452 S.E.2d 659, 662 (Va. 1995). To reiterate, when the language granting an easement is "clear, ambiguous, and explicit," a court interpreting it "should look no further than the four corners of the instrument under review," which in this case is the 1950 ROW. *Langman*, 442 S.E.2d at 498-99.

The term "structure" [6] has been broadly defined to mean, *inter alia*, "something having a definite or fixed pattern of organization," much like a fence. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2267 (1981); *see* BLACK'S LAW DICTIONARY 1559 (9th ed. 2009) (defining "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together"). Although it may be inferred from the definition of a structure that all buildings are structures, *see id.* ("a building is a structure"); *id.* at

---

[6] There is no question that a fence is not a "building." *See* BLACK'S LAW DICTIONARY 222 (9th ed. 2009) (defining "building" as "[a] structure with walls and a roof"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 292 (1981) (defining "building" as "a constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure – *distinguished from structures not designed for occupancy (as fences or monuments)* and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy.") (emphasis added); *see also N.J. Power & Light Co. v. Twp. of Denville, County of Morris*, 194 A.2d 16, 19 (N.J. Sup. Ct. App. Div. 1963) ("Certainly, a fence is not a 'building' within the commonly understood meaning of that word.").

222 (defining "building" as "[a] structure with walls and a roof, esp[ecially] a permanent structure"), fences are most certainly also structures. *Black's Law Dictionary* defines a fence as, *inter alia*, a "*structure* . . . erected for the purpose of inclosing a piece of land, or to divide a piece of land into distinct portions, or to separate two contiguous estates." BLACK'S LAW DICTIONARY 618 (6th ed. 1990) (emphasis added). *Webster's Dictionary* similarly defines a fence as "a barrier intended to prevent escape or intrusion or to mark a boundary [such as] a *structure* of posts and boards, wire, pickets, or rails commonly used as an enclosure for a field or yard." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 837 (1981) (emphasis added). It also distinguishes buildings from other "*structures* not designed for occupancy ([such] as *fences* . . . .)." *Id.* at 292 (emphasis added). Both dictionaries make explicit the view that fences, like buildings, are a subcategory of the broadly defined term "structure." *See also Oracle v. Santa Cruz County Planning Dep't*, No. 5:09-cv-00373 JF (PVT), 2010 WL 3930412, at *12 (N.D. Cal. Oct. 6, 2010) ("Plaintiffs contend that a fence is a 'structure,' and the Court agrees that fencing typically is a 'piece of work' that is 'artificially built or composed of parts joined together in some definite manner.'"); *United States v. Tone*, No. CV-08-5034-FVS, 2008 WL 4330316, at *1 (E.D. Wash. Sept. 16, 2008) ("Plaintiff argues that injunctive relief is appropriate in this case because the easement grant is clear and specific that Plaintiff acquired the right to remove structures from its easement, and Defendants' fence is a structure encroaching on Plaintiff's easement . . . . The entry of injunctive relief is appropriate for the reasons cited by the Plaintiff."). Therefore, the ordinary meaning and popular use of the term "structure" plainly includes fences.

As Ott has offered nothing to support his claim that the term "structure" is sufficiently

12

ambiguous or may be narrowly construed to exclude fences—he does not suggest what a fence may be considered otherwise—the undersigned finds that the term "structure" as contemplated and expressly prohibited by the 1950 ROW encompasses fences. In fact, the language of the easement in no way indicates that the parties intended anything other than the term's ordinary meaning and popular use. Because Ott continues to maintain a fence on the easement, he is in clear violation of the 1950 ROW, which explicitly forbids, with no exception, "structures of any nature [to] be erected" thereon. ECF No. 1, attach. 3 at 2.

## B. Construing the Scope of the 1963 ROW

No party may fairly claim that Ott's right to fully use and enjoy his property is not subjugated to Columbia's ability to maintain and operates its pipelines as plainly expressed in the 1963 ROW: "Grantors may fully use and enjoy the premises, *subject to* the rights of the Grantee to maintain and operate said line or lines." *Id.*, attach. 4 at 1 (emphasis added). Here, the grant of an easement to Columbia to maintain and operate certain pipelines on Ott's property (below grade) is not ambiguous. The more challenging issue, at least from the parties' perspectives, is ascertaining the scope of this subjugation, which is not clearly established in the 1963 ROW.

"[U]nder Virginia law, use of an easement 'includes those uses which are incidental and necessary to the reasonable and proper enjoyment of the easement, but is limited to those that burden the servient estate as little as possible." *Bernier v. Columbia Gas Transmission Corp.*, No. Civ.A.3:05CV00011, 2005 WL 2621989, at *5 (W.D. Va. Oct. 12, 2005) (quoting *Scott v. Karmy*, 52 Va. Cir. 118, 124 (Va. Cir. Ct. 2000)) (citing *County of Patrick v. United States*, 596 F.2d 1186, 1191 (4th Cir. 1979); *Lynchburg v. Smith*, 186 S.E. 51 (Va. 1936)). The only evidence the Court has before it to determine the use that is "incidental and necessary to the

13

reasonable and proper enjoyment of" Columbia's right to maintain and operate its pipelines is the Declaration of Stanley K. Parrish ("Parrish"), ECF No. 29, attach. 1, which Columbia submitted with its brief in support of its motion for summary judgment, *see* FED. R. CIV. P. 56(c)(4) (requiring that, *inter alia*, "declaration[s] used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated"). Other than argument, Ott offered nothing in response to this evidence.

Parrish, as one of Columbia's engineers, averred that the pipelines, which are two of the primary sources of natural gas to the Tidewater area of Virginia, must be safely maintained and operated to sustain a continuous supply of gas to the region. ECF No. 29, attach. 1, ¶ 10. A width of seventy feet, as granted under the 1950 and 1963 ROWs, is necessary to safely access the pipelines for maintenance, inspection, repair, and replacement as required by the Code of Federal Regulations, and to comply with the regulations of the Occupational Safety and Health Administration. *Id.*, attach. 1, ¶ 11. According to Parrish, encroachments, such as the improvements that Ott currently maintains on his property, interfere with these objectives, *id.*, attach. 1, ¶¶ 17-18, 21, thereby possibly causing "damage to person or property and/or a loss of supply of natural gas," *id.*, attach. 1, ¶¶ 21, 24, and they also interfere with Columbia's ability to prevent third-party damage, which is a leading cause of pipeline incidents, *id.*, attach. 1, ¶ 20. In particular, Parrish opined that the above-ground pool impedes excavation purposes and access to the pipelines in the event of repair or replacement, *id.*, attach. 1, ¶ 24, and as to the shed, leaking gas may accumulate therein, thereby increasing the likelihood of an explosion, *id.*, attach. 1, ¶ 28. These concerns become all the more significant as the pipelines are situated in a high-

consequence area that is determined by the population density and activity around a pipeline, the failure of which could substantially and detrimentally impact person and property. *Id.*, attach. 1, ¶ 26.

The 1963 ROW plainly granted Columbia the right to maintain and operate certain pipelines on Ott's property; a right that clearly supersedes Ott's full use and enjoyment of his property. *See* ECF No. 1, attach. 4 at 1 ("Grantors may fully use and enjoy the premises, *subject to* the rights of the Grantee to maintain and operate said line or lines.") (emphasis added). In ascertaining the incidental and necessary use to which Columbia may reasonably and properly enjoy the easement it was granted, the only evidence the Court has before it upon which to make such a determination is the Parrish Declaration. This Declaration supports Columbia's claim that the improvements, which are situated on Ott's property, encroach upon the easement granted by the 1963 ROW and impede Columbia's ability to maintain and operate its pipelines. This evidence remains uncontradicted. For example, although he did not, Ott could have submitted a dueling and contradictory declaration from an engineer like Parrish. At least in this circumstance, the parties might have placed in dispute the following genuine issue of material fact: whether an above-ground pool, shed, and fence interfere with Columbia's right under the 1963 ROW. As this is not the case, the evidence remains undisputed, and the undersigned, in light of the Parrish Declaration and Virginia law, finds that Ott continues to violate the 1963 ROW by maintaining on the easement and his property certain improvements that impair Columbia's right and ability to maintain and operate its pipelines.

Moreover, it is of little consequence that, according to Ott, federal regulations governing the maintenance and operation of Columbia's pipelines "cannot be considered because what

15

[Columbia's] predecessors purchased in 1963 is all that it purchased, regardless of what regulations have changed." ECF No. 32 at 10. The Virginia Supreme Court previously held:

> Where a right of way is granted or reserved it may be used for any purpose to which the land accommodated thereby may reasonably be devoted *unless the grant or reservation specifically limits the use*, and the beneficiary of the right is not restricted to the type of vehicles or mode of travel existing at the time the easement was created, but he may use the way for any vehicle which his reasonable needs may require in the development of his estate.

*Wagoner v. Jack's Creek Coal Corp.*, 101 S.E.2d 627, 629 (Va. 1958) (citations omitted). Applying this principle to this case, the 1963 ROW is limiting in that the right Columbia possesses is the maintenance and operation of its pipelines, but it is silent as to whether Columbia's exercise of this right is restricted to the type of federal regulations in effect at the time the right was granted. If the Court, in accepting Ott's premise, finds that Columbia is so restricted, then the 1963 ROW would, in effect, be nullified. Specifically, if Columbia may not follow evolving federal standards, which it is otherwise required by law to follow, because such regulations did not exist in or predate 1963 when the easement was conferred, then Columbia may not continue to operate and maintain its pipelines because it would be unable to comply with federal regulations. The Court will not construe or limit an easement to such an extent that the intention of the parties is frustrated and the purpose for which the easement was created, namely, the maintenance and operation of certain pipelines, is thwarted. For these reasons, the undersigned finds that Columbia's exercise of its right under the 1963 ROW is not restricted to the type of federal regulations existing at the time the right was granted.[7]

---

[7] If taken to its (il)logical conclusion, Ott's argument would also support limiting the full use and enjoyment of his property to that which existed at the time the parties entered into the 1963 ROW. For example, had Ott erected on his property a certain structure that was not known to have existed in 1963, then Columbia could, as Ott is attempting to do here, demand that it be removed because, simply put, it did not exist in or predate 1963. Surely the parties did not intend such an illogical result.

Finally, Ott submitted with his brief in opposition to Columbia's Motion for Summary Judgment a July 1, 1999 letter purportedly from Columbia to a third-party couple residing in the same area as Ott.[8]  ECF No. 32, attach. 1 at 5.  In the letter, Columbia informed the couple that their pool and pool decking were situated on the easement and over certain pipelines, thereby encroaching upon Columbia's ability to inspect and repair the pipelines.  The couple consented to remove these objects in the event of replacement or if the property was sold.  Additionally, in his supplemental responses to Columbia's first set of interrogatories, Ott named a second couple residing in the area who "appear[s] to have structures location within the claimed . . . easement." *Id.*, attach. 1 at 3.  According to Ott, this demonstrates that "an easement free of encroachments is obviously not necessary for [Columbia's] safe operation and maintenance of the pipelines." *Id.* at 4, ¶ 16.

In challenging the Parrish Declaration, Ott references his supplemental responses to Columbia's first set of interrogatories and request for production of documents, which are not verified or signed by Ott but rather by his counsel.  As such, they cannot defeat Columbia's properly supported Motion for Summary Judgment.  *See* FED. R. CIV. P. 56(c); *Rowell v. Palmetto Health Alliance*, No. 3:09-3077-MBS-PJG, 2011 WL 4501978, at *1 (D. S.C. Aug. 17, 2011).  Ott also attaches to his brief a number of unsworn, unauthenticated documents including a purported agreement by Columbia allowing a pool in an easement on another property and satellite and ground-level photographs of various properties.  With regard to this documentary evidence, such "unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.  To be admissible at the summary judgment stage, documents must be

---

[8] The letter is not authenticated.

authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)[9]—that the documents be admissible in evidence." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999) (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)). Therefore, these documents as well as unverified interrogatory responses that are drafted by counsel may not defeat Columbia's properly supported Motion for Summary Judgment.

Even if the Court may appropriately consider this evidence, it still fails to raise a genuine issue of material fact. First, the fact that Ott's neighbors may currently maintain on *their* property a swimming pool and fence does not directly contradict Parrish's opinion that the improvements Ott maintains on *his* property interfere with Columbia's rights under the ROWs. Second, Ott fails to question Parrish's qualification to render an opinion as to the safe maintenance and operation of Columbia's pipelines. As there appears to be little doubt that only an expert may offer such an opinion, Ott does not counter this evidence with an expert of his own. Accordingly, the only evidence the undersigned has before it to ascertain whether the removal of Ott's improvements is necessary to the safe operation and maintenance of Columbia's pipelines is the Parrish Declaration, which supports the removal.

## C. Affirmative Defenses

Although Ott raised certain affirmative defenses—estoppel and waiver—in his Answer, ECF No. 13 at 4, ¶¶ 2-3, they are merely boilerplate, and a party may not simply rely on his pleadings to respond to an opposing party's motion for summary judgment. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) ("A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a

---

[9] The 2010 amendments to Rule 56 place in paragraph (c)(4) the requirements from former paragraph (e)(1).

genuine issue for trial.'") (citations omitted).  Additionally, Ott presented no evidence or even argument in his briefs to support the applicability of estoppel and waiver,[10] despite Columbia addressing these defenses at length in its briefs.  *See* ECF No. 29 at 20-23; ECF No. 33 at 15-16. The undersigned, therefore, finds Ott's affirmative defenses are insufficient to defeat its Motion for Summary Judgment.  *See W. Sur. Co. v. Beck Elec. Co., Inc.*, No. 3:06cv383, 2008 WL 345821, at *6 (W.D.N.C. Feb. 5, 2008); *see also Vigo v. Reed*, No. 3:11-CV-2044-G, 2013 WL 786925, at *4 (N.D. Tex. Mar. 4, 2013) (granting plaintiff's motion for summary judgment against defendant's affirmative defenses where defendant presented no evidence to support his defenses).

### D. Counterclaim

Finally, Columbia has moved for summary judgment on Ott's Amended Counterclaim, in which Ott alleges that the 1950 and 1963 ROWs constitute a taking of his property because "Columbia claims the right to prohibit and/or exclude all structures on [the] easement" and it also "has failed to obtain the Easements Rights from [] Ott or his predecessors in title."  ECF No. 14 at 1, ¶¶ 3, 5.  The sole argument Ott asserts to support the denial of Columbia's Motion, however, is that the Court earlier denied its motion to dismiss his Amended Counterclaim for failure to state a claim.  ECF No. 32 at 11.  According to Ott, "[t]he doctrine of law of the case restricts a court to legal decisions it has made on the same issues in the same case."  *Id.* (citations omitted).  This doctrine is not so restrictive, though.  Denial of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is not a final order and, therefore, is not appealable.  *Jenkins v.*

---

[10] One passing, conclusory reference to estoppel *in a one-line footnote* is insufficient to defeat Columbia's Motion for Summary Judgment.  ECF No. 31 at 9 n.2 ("Given Plaintiff's action to allow other structures, Plaintiff is estopped from now claiming removal is necessary."); *cf. Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (mere passing reference to issue is insufficient to preserve that issue for appeal and issue is deemed waived).

*Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) ("[A] denial of a motion to dismiss is not appealable, because it is not a final order."). Additionally, denial of a motion to dismiss remains subject to reconsideration until the Court enters final judgment in the case. Therefore, such a denial does not constitute "the law of the case" as envisioned by the Fourth Circuit and does not preclude the undersigned from recommending summary judgment be entered in Columbia's favor on Ott's Amended Counterclaim, even though a motion to dismiss on the same pleading was previously denied. *See, e.g.*, *Pérez-Ruiz v. Crespo-Guillén*, 25 F.3d 40, 42 (1st Cir. 1994) ("Appellants first challenge the dismissal order on the ground that the earlier district court ruling denying the motion to dismiss in the Lopez action became the 'law of the case' in the consolidated action. Appellants misapprehend the 'law of the case' doctrine. Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case.") (citations omitted); *see also Plotkin v. Lehman*, No. 98-1638, 178 F.3d 1285, 1999 WL 259669, at *1 (4th Cir. Apr. 30, 1999) (unpublished table and *per curiam* decision) (adopting *Pérez-Ruiz*).

The undersigned also draws Ott's attention to the Court's January 2, 2013, Order denying Columbia's motion to dismiss the Amended Counterclaim. The Court opined that "the resolution of Columbia's rights pursuant to the ROW Agreements and Ott's assertion that he is entitled to just compensation are two sides of the same coin." ECF No. 19 at 6-7 (footnote omitted). As the undersigned, here, finds that Ott has breached the 1950 and 1963 ROWs by maintaining certain improvements, a logical extension of this—the opposite side of the same coin—is that Columbia's exercise and enforcement of the ROWs do not amount to inverse condemnation.

Virginia law is also clear that "a property owner may seek compensation for a categorical taking only when the state is exercising regulatory power over the 'bundle of rights' that the owner acquired when first obtaining title to the property." *City of Va. Beach v. Bell*, 498 S.E.2d 414, 417 (Va. 1998). By purchasing his "bundle of rights" *with* the 1950 and 1963 ROWs, Ott's ability to develop his property as he saw fit, such as erecting and maintaining thereon certain buildings and structures, was restricted. Therefore, he must accept and cannot avoid whatever disadvantages are attendant with such restrictions absent evidence that "Columbia has failed to obtain the Easement Rights from [him] or his predecessors in title." ECF No. 14 at 1, ¶ 5. Ott offers no such evidence; in fact, he fully admits in his supplemental responses to Columbia's requests for admission that he is the successor-in-interest of the grantor of the 1950 and 1963 ROWs. ECF No. 29, attach. 3 at 1, 2. If the Court accepted Ott's premise that Columbia's exercise of its easement rights constitutes inverse condemnation for which he should be compensated accordingly, then it would, in effect, allow Ott to benefit from his own infringement. Where Columbia is appropriately exercising its easement rights, as it is doing here, a claim of inverse condemnation must fail.

## V. RECOMMENDATIONS

For these reasons, the undersigned **RECOMMENDS** that Columbia's Motion for Summary Judgment, ECF No. 28, be **GRANTED** and Ott's Motion for Summary Judgment, ECF No. 26, be **DENIED**. It is, therefore, further **RECOMMENDED** that the Court **FIND** Ott in breach of the 1950 and 1963 right-of-way agreements and **DIRECT** that he remove from his property the above-ground swimming pool, shed, and fence that are located on the aforementioned right-of-ways within thirty days of entry of the Final Order. The undersigned

declines to recommend that any prohibitory injunctive relief, as discussed in section III.B., *supra*, be granted.

## VI. **REVIEW PROCEDURE**

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. The Chief United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
September 27, 2013

22

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. Travis Aaron Sabalewski, Esq.
Reed Smith LLP
901 East Byrd Street, Suite 1700
Richmond, Virginia 23219-4069
Counsel for the Plaintiff

Mr. Jeffrey A. Hunn, Esq.
Pender & Coward PC
222 Central Park Avenue, Suite 400
Virginia Beach, Virginia 23462
Counsel for the Defendant

Fernando Galindo
Clerk of the Court

By:

     Deputy Clerk
     September 26, 2013

23